23-7013-cr
*United States v. Tramond G. Wallace, Jr.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of November, two thousand twenty-four.

PRESENT:  RICHARD C. WESLEY,
          GERARD E. LYNCH,
          MARIA ARAÚJO KAHN,
              *Circuit Judges.*

———————————————————————

UNITED STATES OF AMERICA,

     *Appellee,*

    v.                                                                23-7013-cr

TRAMOND G. WALLACE, JR.,

     *Defendant-Appellant.*

———————————————————————

FOR DEFENDANT-APPELLANT: Marsha R. Taubenhaus, New York, NY.

FOR APPELLEE: Rajit S. Dosanjh, Assistant United States Attorney, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY.

Appeal from the August 15, 2023, judgment of the United States District Court for the Northern District of New York (Brenda K. Sannes, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment on August 15, 2023, is **AFFIRMED** in part, and the appeal is **DISMISSED** in part.

Defendant-Appellant Tramond G. Wallace, Jr. ("Wallace") appeals from the district court's August 15, 2023, judgment, rendered after a guilty plea, convicting him of one count of possession of more than 40 grams of fentanyl with intent to distribute and one count of possession of a firearm in furtherance of a drug trafficking crime. *See* 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); 18 U.S.C. § 924(c)(1)(A)(i). The district court principally sentenced Wallace to 157 months in prison to be followed by four years' supervised release, including special conditions mandating that Wallace partake in a substance abuse program, contribute to the cost of his treatment, and abstain from alcohol use.

On appeal, Wallace argues, *inter alia*, that the district court (1) failed to determine that Wallace sufficiently understood the nature of the § 924(c) charge, in violation of Fed.

2

R. Crim. P. 11(b)(1)(G); (2) failed to determine that there was an adequate factual basis for the § 924(c) charge, in violation of Fed. R. Crim. P. 11(b)(3); and (3) erred in imposing the special conditions of supervised release.[1]  For the reasons that follow, we conclude that Wallace's claims are without merit and, accordingly, affirm the judgment of the district court.  We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision.

## BACKGROUND

Wallace's prosecution followed an investigation by the U.S. Postal Inspection Service ("USPI") and Drug Enforcement Administration ("DEA") that commenced after USPI seized a parcel containing 3.624 kilograms of methamphetamine addressed to Wallace's apartment on August 27, 2021.  Over the course of the following year, investigators uncovered packaging containing methamphetamine residue in trash bins outside Wallace's apartment, approximately twelve parcels weighing two to nine pounds, shipped from California to Wallace's apartment, and one parcel containing

---

[1] Wallace also argues that the district court erroneously applied a sentencing enhancement, U.S.S.G. § 2D1.1(b)(12).  The Government responds that this claim should be dismissed because it is barred by the appeal waiver in Wallace's plea agreement.  Wallace concedes that this claim is covered by his appeal waiver, but argues that this Court should reject "unilateral waivers from defendants."  Appellant Br. 44.  However, "the enforceability of unilateral appeal waivers in the plea context is well settled."  *United States v. Burden*, 860 F.3d 45, 52 (2d Cir. 2017).  We therefore dismiss Wallace's appeal to the extent it challenges the application of the sentencing enhancement.

3

$20,000 shipped by Wallace to California. When investigators executed a search warrant at Wallace's apartment on May 6, 2022, they found, *inter alia*, two unloaded pistols, several rounds of live ammunition for other weapons, approximately 288.1 grams of fentanyl, $3,203 in U.S. currency, and drug trafficking paraphernalia, including a money-counting machine, digital scale, and drug packaging. On September 15, 2022, he was charged with three counts: possession of more than 400 grams of fentanyl with intent to distribute (Count 1), possession of a firearm in furtherance of a drug trafficking crime (Count 2), and possession of a firearm by a prohibited person (Count 3). On February 2, 2023, Wallace signed a plea agreement in which he agreed to plead guilty to a lesser included offense under Count 1, involving only 40 grams of fentanyl, and Count 2 of the indictment. The government agreed to dismiss Count 3. The plea agreement included an appellate waiver for any sentence at or under 168 months' imprisonment. Wallace's change of plea hearing was held on February 15, 2023, and his sentencing hearing was held on August 11, 2023. The instant appeal followed.

## DISCUSSION

### I. Rule 11 Claims

Wallace argues that the district court violated Rule 11(b)(1)(G) by failing to ensure that he understood the nature of the firearm charge at the change of plea hearing. Section 924(c) makes it a crime to possess a firearm "in furtherance of" a drug trafficking charge. 18 U.S.C. § 924(c)(1)(A). Wallace contends that the district court misinformed him about

4

the offense when it asked him if he planned to use his firearms "in connection with" drug trafficking instead of using the statutory term "in furtherance" of it.[2] Wallace also argues that the district court violated Rule 11(b)(3) by accepting his plea when the record did not establish that the firearms were actually possessed in furtherance of drug trafficking. We are unpersuaded by both arguments.

We review the district court's compliance with Rule 11 for plain error because Wallace did not make a timely objection to the district court. *See United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). On a plain error standard of review, a defendant must demonstrate that (1) "there is an error"; (2) "the error is clear or obvious, rather than

---

[2] The following is the colloquy between Wallace and the district court:

THE COURT: And can you tell me in your own words what you did that makes you believe that you're guilty of the two charges that you are pleading guilty to?

[DEFENSE COUNSEL]: Could I have just a second.

THE COURT: Yes, you may.
[Discussion off the record between Wallace and his defense counsel].

DEFENSE COUNSEL: Okay, thanks, Judge.

WALLACE: On May 6 I received a package of fentanyl in the mail and when they searched the apartment, they found other, um, other amounts of fentanyl and two unloaded firearms in there.

THE COURT: And were the firearms used, or did you plan to use the firearms in connection with drug trafficking?
[Another off the record discussion between Wallace and his defense counsel].

WALLACE: Yes.

App'x 88.

subject to reasonable dispute"; (3) "the error affected the appellant's substantial rights"; and (4) "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (alteration adopted) (internal quotation marks omitted) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). "[T]o demonstrate that a Rule 11 error affected his substantial rights, a defendant must show 'a reasonable probability that, but for the error, he would not have entered the plea.'" *United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006) (quoting *Dominguez Benitez*, 542 U.S. at 83).

Rule 11 requires that the district court "inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). District courts may satisfy this obligation by "describing the elements of the offense in [its] own words," or providing that information "by reading the indictment to the defendant where the pertinent count spells out the elements of the offense and the circumstances indicate that this will be sufficient." *United States v. Maher*, 108 F.3d 1513, 1521 (2d Cir. 1997). There is no prescribed method for conducting the Rule 11 inquiry, but "[w]hat is essential, however, is that the court determine by some means that the defendant actually understands the nature of the charges." *Id.*

Here, the district court ensured Wallace's understanding by using both methods described in *Maher*: reading the indictment and elements of the offense as well as

6

explaining them in its own terms. At his change of plea hearing, Wallace confirmed that he spoke to his attorney about the charges to which he was pleading guilty, and that he received and read a copy of the indictment and the plea agreement. The plea agreement stated that:

> [T]he defendant possessed the[] firearms in furtherance of his possession with intent to distribute controlled substances in that the firearms afforded protection of the defendant, drugs, and drug proceeds kept at the defendant's apartment, including by being a means of intimidation against others who may seek to harm the defendant and steal the drugs and proceeds.

App'x 58–59. The district court had the clerk read the pertinent charge in the indictment to Wallace just prior to his entry of a guilty plea. On three separate occasions, Wallace indicated to the district court that he understood the charges against him involved the use of a firearm in furtherance of his drug trafficking charge. Importantly, *after* the part of the colloquy wherein the district court used the term "in connection with," the district court asked Wallace if the government's rendition of the fact that he possessed his firearms "in furtherance of" his drug trafficking by means of protection-through-intimidation of those who may have sought to harm Wallace or steal his drugs was true. App'x 90. Wallace answered "[y]es." App'x 90. We have no reason to believe that the district court's use of the phrase "in connection with" led Wallace to misunderstand the § 924(c) charge.

The district court was entitled to rely on Wallace's reading of the indictment, the plea agreement, and his repeated assurances, under oath, that he understood the firearm

7

charge to be "in furtherance of" his drug trafficking activities. *See Maher*, 108 F.3d at 1521. Wallace was twenty-eight years old at the time of the hearing and had attended college for "two or three semesters." App'x 77. Wallace confirmed that his mind was clear at the time of the hearing, and that he was able to understand the proceedings. The district court did not plainly err in concluding that Wallace understood that the possession of firearm charge to which he was pleading required that the firearm was used in furtherance of his drug trafficking activities.[3]

Nor do we find that the district court plainly erred in determining that there was an adequate factual basis for the plea. The record reflects that the pistols were found in Wallace's bedroom with the fentanyl and other drugs. The fact that the guns were unloaded and the ammunition was not compatible with the guns does not undermine the district court's finding that the record contains sufficient evidence that Wallace possessed the firearms to protect the drugs and money found in his apartment through defense-by-intimidation. *See United States v. Finley*, 245 F.3d 199, 202–03 (2d Cir. 2001) (rejecting a sufficiency of the evidence challenge to a § 924(c) conviction where an unloaded firearm

---

[3] Even if we were to assume that the district court erred in explaining the meaning of "in furtherance," Wallace fails to point to any evidence in the record that, but for the alleged error, he would not have entered or would have withdrawn from the plea agreement. *See United States v. Collymore*, 61 F.4th 295,298 (2d Cir. 2023) ("[T]o show plain error, a defendant must establish . . . that there is a reasonable probability that, but for the error, he would not have entered the plea." (citation omitted)). By entering into the plea agreement to a lesser included trafficking offense that carried a lower mandatory minimum term of imprisonment and resulted in dismissal of the additional charge of felon-in-possession, Wallace received significant benefits.

was found in the same room where drugs were dealt); *see also McLaughlin v. United States*, 476 U.S. 16, 17–18 (1986) (holding that an unloaded gun is a "dangerous weapon" under the federal bank robbery statute because an unloaded gun "instills fear in the average citizen"). The proximity of the firearms to the drugs, currency, and drug paraphernalia "militate[s] against an inference of innocent use.". *United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005). Moreover, as noted above, Wallace specifically admitted that the government correctly stated that he possessed the guns because they "afforded protection of [himself], drugs, and drug proceeds kept at [his] apartment, including by being a means of intimidation against others who may seek to harm [him] and steal the drugs and proceeds." App'x 90.

## II. Special Conditions of Supervised Release

Lastly, Wallace contends that the district court committed plain error by imposing special conditions of supervised release requiring enrollment in a substance abuse program and abstinence from alcohol consumption because the record does not support the imposition of these conditions. The two conditions were adopted upon the recommendation of the Probation Office in the Presentence Report ("PSR").

Because Wallace had prior notice of the proposed special conditions in the PSR and did not preserve a challenge to the conditions below at sentencing, we review the imposition of the conditions for plain error. *See United States v. Bleau*, 930 F.3d 35, 39 (2d Cir. 2019) (per curiam) ("[W]hile we ordinarily review the imposition of conditions of

9

supervised release for abuse of discretion, we review for plain error where, as here, the defendant had advance notice of the challenged condition and failed to object during sentencing.").

We have held that district courts enjoy "wide latitude in imposing conditions of supervised release." *United States v. MacMillen*, 544 F.3d 71, 74 (2d Cir. 2008). However, district courts "must 'make an individualized assessment when determining whether to impose a special condition of supervised release, and . . . state on the record the reason for imposing it.'" *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019) (alteration in original) (quoting *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018)). The explanation "must be adequately supported by the record." *Id.* Although the failure to adequately explain why a special condition is supported by the record is error, the condition may be upheld "if the district court's reasoning is self-evident in the record." *Betts*, 886 F.3d at 202 (internal quotation marks omitted).

The district court noted that both special conditions were warranted based in part upon Wallace's "substance abuse issues." App'x 124. With respect to the alcohol abstinence, the court noted the PSR's reflection of a "history of substance abuse," specifically citing a 2022 arrest for driving while intoxicated ("DWI").[4] App'x 123; *see United States v. Forney*, 797 F. App'x 31, 33 (2d Cir. 2019) (summary order) (holding that

---

[4] Although the arrest did not lead to a charge, a chemical breath test revealed that Wallace's blood alcohol content was .13%, or .05% above the legal limit in New York. N.Y. Veh. & Traf. Law § 1192(2).

10

the district court was justified in concluding that an absolute alcohol ban—as opposed to a prohibition on excessive consumption—was an appropriate condition and self-evident on the record due to a recent DWI arrest and guilty plea).  Wallace reported using marijuana daily since approximately 2016, even after completing a drug treatment program mandated during a prior state prison sentence.  In addition, the PSR stated that Wallace had a history of arrests for marijuana possession and held approximately twenty-seven pounds of suspected marijuana in his apartment's basement storage locker at the time of the execution of the search warrant.  It was therefore not plainly erroneous for the district court to conclude that alcohol abstinence and a substance abuse treatment program would tend to promote Wallace's rehabilitation in the instant case.

*    *    *

We have considered Wallace's remaining arguments and conclude that they are without merit.  For the reasons set forth above, the judgment of the District Court is **AFFIRMED** in part, and the appeal is **DISMISSED** in part.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11